CYPRUS INDUSTRIAL MINERALS COMPANY, Petitioner,

v.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, and Raymond J. Donovan, Secretary of Labor, Respondents.

No. 81–7062.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 3, 1981.

Decided Dec. 28, 1981.

Scott H. Dunham, O'Melveny & Myers, Los Angeles, Cal., for petitioner.

Ann S. Rosenthal, Washington, D. C., for respondents.

Before GOODWIN and FLETCHER, Circuit Judges, and PANNER,* District Judge.

GOODWIN, Circuit Judge.

After a fatal accident, a Federal Mine Safety and Health inspector cited Cyprus for a violation of 30 C.F.R. § 57.3–22 (1980) and issued a withdrawal order. An unsuccessful review petition before the Mine Safety and Health Administration led Cyprus to petition this court for review. Cyprus contends: (1) that the operation where the accident occurred was not a mine within the meaning of the Federal Mine Safety and Health Act, 30 U.S.C. § 802(h)(1) (Supp. III 1979); and (2) that the employment of an independent contractor to perform the operation effectively insulated Cyprus from liability under the Act. Neither point is well taken, and the petition is denied.

Cyprus grounds its contention substantially on the assertion that the accident site was not a mine because the work under way consisted of driving exploratory drifts in search of a commercially exploitable deposit of talc rather than in the extraction of minerals.

The broad language of the statute and the legislative history do not support Cyprus' interpretation of the definition of a mine under the Act. The relevant Senate Report stated:

"Thus, for example, the definition of 'mine' is clarified to include the areas, both underground and on the surface, from which minerals are extracted (except minerals extracted in liquid form

---

* The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

underground), and also, all private roads and areas appurtenant thereto. Also included in the definition of 'mine' are lands, excavations, shafts, slopes, and other property, including impoundments, retention dams, and tailings ponds. These latter were not specifically enumerated in the definition of mine under the Coal Act. It has always been the Committee's express intention that these facilities be included in the definition of mine and subject to regulation under the Act, and the Committee here expressly enumerates these facilities within the definition of mine in order to clarify its intent. The collapse of an unstable dam at Buffalo Creek, West Virginia, in February of 1972 resulted in a large number of deaths, and untold hardship to downstream residents, and the Committee is greatly concerned that at that time, the scope of the authority of the Bureau of Mines to regulate such structures under the Coal Act was questioned. Finally, the structures on the surface or underground, which are used or are to be used in or resulting from the preparation of the extracted minerals are included in the definition of 'mine'. *The Committee notes that there may be a need to resolve jurisdictional conflicts, but it is the Committee's intention that what is considered to be a mine and to be regulated under this Act be given the broadest possibly [sic] interpretation, and it is the intent of this Committee that doubts be resolved in favor of inclusion of a facility within the coverage of the Act.*" S.Rep. No. 95–181, 95th Cong., 1st Sess. 1, *reprinted in* [1977] U.S.Code Cong. & Ad.News 3401, 3414 (emphasis added).

Cases in this and other circuits interpreting Section 3(h)(1) have interpreted the definition of mine very broadly. *Marshall v. Wait*, 628 F.2d 1255, 1258 (9th Cir. 1980) (backyard rock quarry is within the definition of a mine); *Marshall v. Stoudt's Ferry Preparation Co.*, 602 F.2d 589, 592 (3rd Cir. 1979)`,` *cert. denied*, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980) (sand and gravel preparation plant is a "mine" within the meaning of the Act).

As *Stoudt's Ferry*, 602 F.2d at 592, indicates, it does not matter if what is included in the definition fails to conform to the conventional concept of mining:

"Although it may seem incongruous to apply the label 'mine' to the kind of plant operated by Stoudt's Ferry, the statute makes clear that the concept that was to be conveyed by the word is much more encompassing than the usual meaning attributed to it—the word means what the statute says it means." [Footnote omitted.]

As the Secretary has argued, remedial statutes are construed broadly to "best effectuate" the Congressional purpose. *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 13, 100 S.Ct. 883, 891, 63 L.Ed.2d 154 (1980); *Magma Copper Co. v. Secretary of Labor*, 645 F.2d 694, 697 (9th Cir. 1981).

The activity at Cyprus' Bosal No. 1 Claim could hardly be described as anything but mining. The contractor dug a tunnel into a hill to assess the value of the talc deposits. This activity would ordinarily be called mining even under more conventional definitions.

Cyprus next argues that even if Bosal No. 1 was a mine and conditions at the site constituted an imminent danger, the withdrawal order is invalid because the Mine Safety and Health Administration cited the wrong party. Cyprus says the inspector should have cited Holmes, the independent contractor, rather than Cyprus, the owner of Bosal No. 1, because Holmes had complete control over the work done at the site.

Cyprus makes two general arguments to support this contention: (1) the express terms of the Act and the legislative history support citing only the independent contract when the contractor is in control of the work; and (2) the Secretary's interim policy of citing only owner-operators is contrary to the purposes of the Act and therefore constitutes an abuse of discretion.

(1) Prior to the enactment of the Act, there was some question whether the Secretary could cite independent contractors for violations of mine health and safety regula-

tions under the Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.* The Fourth Circuit held that the Secretary could cite independent contractors even though the Coal Act did not include independent contractors in the definition of "operator." *Bituminous Coal Oper. Ass'n v. Sec'y of Interior,* 547 F.2d 240, 246 (4th Cir. 1977), *accord, Association of Bituminous Contractors v. Andrus,* 581 F.2d 853, 862 (D.C.Cir. 1978).

Section 3(d) of the Act, 30 U.S.C. § 802(d) (Supp. III 1979), specifically adds "independent contractor" to the definition of "operator:"

> "(d) 'operator' means any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or any independent contractor performing services or construction at such mine."

Cyprus, citing S.Rep. No. 95–181, 95th Cong., 1st Sess. 1, *reprinted in* [1977] U.S. Code Cong. & Admin.News 3401, 3414, argues that independent contractors were added to the definition of "operator" in the Act to insure that the party controlling the work would be held *solely* responsible for health and safety violations.

> "Similarly, the definition of mine 'operator' is expanded to include 'any independent contractor performing services of construction at such mine.' It is the Committee's intent to thereby include individuals or firms who are engaged in construction at such mine, or who may be, under contract or otherwise, engaged in the extraction process for the benefit of the owner or lessee of the property and to make clear that the employees of such individuals or firms are miners within the definition of the Federal Mine Safety and Health Act of 1977. In enforcing this Act, the Secretary *should be able to issue citations,* notices, and orders, and the Commission should be *able* to assess civil penalties against *such independent contractors* as well as against the owner, operator, or lessee of the mine. The Committee notes that this concept has been approved by the federal circuit court in *Bituminous Coal Operators' Assn. v.*

*Secretary of the Interior,* 547 F.2d 240 (C.A.4, 1977)." S.Rep. No. 95–181, 95th Cong., 1st Sess. 1, *reprinted in* [1977] U.S. Code Cong. & Ad.News 3401, 3414 (emphasis added).

■ The Secretary argues persuasively that Congress added independent contractors to the definition of "operator" in the Act to clear up any remaining questions about whether the Secretary had the authority to cite independent contractors for violations. However, the addition of "independent contractors" to Section 3(d) did *not* require the Secretary to cite *only* the independent contractor. The addition *permitted* the Secretary to cite the independent contractor, the owner or both. The legislative history cited by Cyprus is consistent with this interpretation. *National Indus. Sand Ass'n v. Marshall,* 601 F.2d 689, 703 (3rd Cir. 1979).

■ In addition, mine owners are strictly liable for the actions of independent contractor violations under the Coal Act and the present Act. *Republic Steel v. Interior Bd. of Mine Operations,* 581 F.2d 868, 870 (D.C.Cir.1978); *Bituminous Coal Oper. Ass'n v. Sec'y of Interior,* 547 F.2d 240, 246 (4th Cir. 1977); *Secretary of Labor v. Republic Steel Corp.,* 1 Fed. Mine Safety & Health Rev. Comm'n Dec. 5, 9, 1979 Occupational Safety & Health Dec. (CCH) ¶ 23,455 at 28,391.

The Secretary presents sound policy reasons for holding owners liable for violations committed by independent contractors. For one thing, the owner is generally in *continuous* control of conditions at the *entire* mine. The owner is more likely to know the federal safety and health requirements. If the Secretary could not cite the owner, the owner could evade responsibility for safety and health requirements by using independent contractors for most of the work. The Secretary should be able to cite either the independent contractor or the owner depending on the circumstances.

> "It bears emphasis that the miners of an independent contractor are invited upon the property of the mine owner to perform work promoting the interests of

the owner. A mine owner cannot be allowed to exonerate itself from its statutory responsibility for the safety and health of miners merely by establishing a private contractual relationship in which miners are not its employees and the ability to control the safety of its workplace is restricted." *Secretary of Labor v. Republic Steel Corp.*, 1 Fed. Mine Safety & Health Rev. Comm'n Dec. 5, 11, 1979 Occupational Safety & Health Dec. (CCH) ¶ 23,455 at 28,392.

Cyprus has made a number of other arguments to attack the issuance of the withdrawal order. We have examined all of them. Cyprus has little reason to complain because as a matter of law it can be held liable for the violations committed by Holmes in any case. As the Secretary indicates, Cyprus may have been cited even under the new guidelines. 30 C.F.R. § 45.-1–.4 (1980). The contractor worked only part-time as a contract miner. The job only lasted a few weeks at most. He used equipment owned by Cyprus. A Cyprus official was present at Bosal No. 1 after the accident.

Bosal No. 1 Mining Claim is clearly a mine within the meaning of Section 3(h)(1) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 802(h)(1) (Supp. III 1979). There is substantial evidence to support the inspector's observations that conditions at Bosal No. 1 constituted an "imminent danger" and the need for a withdrawal order pursuant to Sections 3(j) and 107(a) of the Act. 30 U.S.C. §§ 802(j) and 817(a) (Supp. III 1979). The Secretary did not abuse his discretion by citing Cyprus as the "operator" of Bosal No. 1 within the meaning of Section 3(d) of the Act, 30 U.S.C. § 802(d) (Supp. III 1979).

Affirmed.