**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA,**
**Petitioner,**

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, et al., Respondents.**

No. 87–1136.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 10, 1987.

Decided Feb. 23, 1988.

---

Mary Lu Jordan, with whom Michael H. Holland, Washington, D.C., was on the brief, for petitioner.

Robert M. Clark, Washington, D.C., for respondent Island Creek Coal Co.

L. Joseph Ferrara, Washington, D.C., entered an appearance, for respondent Federal Mine Safety and Health Review Com'n.

Before ROBINSON and HARRY T. EDWARDS, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Section 111 of the Federal Mine Safety and Health Act of 1977 ("Act" or "Mine Act"), 30 U.S.C. § 821 (1982), provides for limited payment of lost wages by a mine "operator" to miners idled when the Secretary of Labor ("Secretary") orders a mine closed temporarily for safety reasons. The narrow issue of statutory construction presented by this case is whether the mine owner—concededly an "operator" within the meaning of the Act—escapes liability under section 111 by virtue of the Secretary's decision to cite only the independent contractor operating the mine for the safety violation that prompted the closure.

We hold that the Act does not so limit the section 111 liability of a mine "operator." The owner is thus liable to the miners for lost wages. We therefore reverse the contrary decision of the Federal Mine Safety and Health Review Commission ("FMSHRC" or "Commission") and remand for further proceedings.

## I. BACKGROUND

### A. The Statutory Framework

The Mine Act was a revision of the Federal Coal Mine Health and Safety Act of 1969 ("Coal Act"). While the Mine Act expanded coverage to include mines other than coal mines, the provisions relevant to this litigation were not greatly changed. Among other enforcement measures, section 104 of the Mine Act, 30 U.S.C. § 814, provides that the Secretary may order the "withdrawal" of all personnel from a mine in case of an unabated violation or multiple unwarrantable failures to comply with mandatory health or safety standards. Section 107, 30 U.S.C. § 817, similarly provides for a withdrawal order in case of "imminent danger." Section 103, 30 U.S.C. § 813, permits emergency orders, including withdrawal orders, following accidents. Section 110, 30 U.S.C. § 820, provides that the Secretary shall impose civil penalties of up to $10,000 for each violation of the Act.

The provision at issue in this litigation, section 111, is intended to provide limited compensation to mine workers who lose wages because of a withdrawal order. The third sentence, under which this action is brought, reads in relevant part as follows:

If a coal or other mine or area of such mine is closed by an order issued under section 814 of this title [section 104] or section 817 of this title [section 107] for a

failure of the operator to comply with any mandatory health or safety standards, all miners who are idled due to such order shall be fully compensated ... by the operator for lost time at their regular rates of pay for such time as the miners are idled by such closing, or for one week, whichever is the lesser.[1]

The section further authorizes the Commission to order payment of "compensation due under this section" upon the filing of a complaint by the miners and the opportunity for a hearing pursuant to the Administrative Procedure Act. However, in contrast to the other enforcement sections, the Secretary has no specified role in the enforcement of section 111.

One other critical element of the statutory scheme is the definition of the term "operator." Section 3(d), 30 U.S.C. § 802(d), defines "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or any independent contractor performing services or construction at such mine."

## B. *The Facts of this Case*

The events from which this case arose took place at a coal mine known as the Number 1 Surface Mine in Holden, West Virginia. The mine was owned by respondent Island Creek Coal Company ("Island Creek"). Under a five-year agreement signed on April 29, 1983, Island Creek contracted the operation of the mine to Monument Mining Corporation ("Monument"). Monument was to mine specified seams of coal, following mining plans and maps prepared by Island Creek, and was to deliver the coal to Island Creek's processing facilities. Island Creek retained ownership of the coal at all times; it paid Monument a fee according to the tonnage of coal it extracted and delivered. The contract specified in some detail the terms under which Monument was to compensate its employees. Within these parameters, Monument had "full and complete control of the work to be performed" under the contract. *See* Island Creek–Monument Agreement, Joint Appendix ("J.A.") 23–39.

The contract between Island Creek and Monument also contained an indemnity agreement relating to mine safety and health, which provided as follows:

Contractor [Monument] shall be solely responsible for and shall fully indemnify and forever defend Owner [Island Creek] from and against any and all liability for any citation or any withdrawal order issued pursuant to the Federal Mine Safety and Health Act of 1977 ... relating to the operations and work performed under this agreement. Contractor shall be solely responsible for abatement of the alleged violation or danger and shall be solely liable for any civil or criminal penalty assessed pursuant to and as a result of said citation or order, whether assessed against Contractor or Owner.

J.A. 30.

On August 1, 1984, a federal mine inspector, acting under authority delegated by the Secretary, issued a withdrawal order to Monument under section 104(d)(2) of the Act,[2] prohibiting any work in the entire pit area of the mine. The order was based on Monument's violation of a safety standard contained in 30 C.F.R. § 77.1303(j) (1984), which governed blasting operations in the vicinity of an underground mine. Mine Citation/Order, J.A. 40. It is undisputed that the blasting was solely under

---

1. The first two sentences of section 111 provide for more limited compensation for *any* closure under section 103, 104 or 107:

    If a coal or other mine or area of such mine is closed by an order issued under section 813 of this title, section 814 of this title, or section 817 of this title, all miners working during the shift when such order was issued who are idled by such order shall be entitled, regardless of the result of any review of such order, to full compensation by the operator at their regular rates of pay for the period they are idled, but for not more than the balance of such shift. If such order is not terminated prior to the next working shift, all miners on that shift who are idled by such order shall be entitled to full compensation by the operator at their regular rates of pay for the period they are idled, but for not more than four hours of such shift.

2. Section 104(d)(2) provides that a withdrawal order shall be issued when a violation is found similar to violations that had already resulted in a withdrawal order under section 104(d)(1).

the control of Monument. Stipulation of Facts ¶ 9, J.A. 20. As a result of the order, 52 miners were idled for two days. Their lost wages totaled $9,636.73. J.A. 41–43.

Several months later, on about October 15, 1984, Monument unilaterally ceased performance under its contract with Island Creek and went out of business.[3] *See* Stipulation of Facts ¶¶ 12–13, J.A. 21; *Monument Mining Corp. v. Secretary of Labor,* 7 F.M.S.H.R.C. 232 (1985).

## C. *Proceedings Below*

Petitioner United Mine Workers of America ("UMWA"), which represents the miners, filed a Complaint for Compensation before the FMSHRC on October 30, 1984, requesting the $9,636.73 in lost wages, as well as interest and attorney's fees. J.A. 3–5. The complaint initially named only Monument. When it appeared that Monument had ceased business,[4] the UMWA successfully moved to amend its complaint to add Island Creek as a respondent. *Order Granting Motion to Amend Complaint* (Apr. 23, 1985), *reprinted in* J.A. 14.

The case was heard by an Administrative Law Judge on the basis of stipulations and written briefs. The parties stipulated, notably, that both Island Creek and Monument were "operators" within the meaning of section 3(d) of the Act. Stipulation of Facts ¶¶ 3 & 5, J.A. 19–20. On September 27, 1985, the ALJ issued a decision finding Monument in default and ordering it to pay the miners' claims, but dismissing the claims as to Island Creek. This decision was based largely on the rationale that only Monument, and not Island Creek, had been responsible for the safety violation that gave rise to the withdrawal order. *Local Union 5817, Dist. 17, UMWA v. Monument Mining Corp.,* 7 F.M.S.H.R.C. 1519 (1985).

The UMWA petitioned for and was granted discretionary review by the FMSHRC of the ALJ's dismissal of the action against Island Creek. On February 27, 1987, the Commission, one member dissenting, affirmed the ALJ's decision. It held that "the 'operator' responsible for the conditions or violations underlying the section 111 claim is the sole operator responsible for compensating the idled miners." *Local Union No. 5817, Dist. 17, UMWA v. Monument Mining Corp.,* 9 F.M.S.H.R.C. 209, 212 (1987).[5] A forceful dissent contended that all "operators" of the mine were jointly and severally liable for compensation under section 111, as they were for violations under other sections of the Mine Act. *Id.* at 214–17 (Lastowka, Comm'r, dissenting).

The UMWA now petitions this court for review of the FMSHRC's order, as provided by section 106(a) of the Mine Act, 30 U.S.C. § 816(a). The FMSHRC has elected not to submit a brief or participate in oral argument, leaving the defense of its position to co-respondent Island Creek.

---

**3.** Island Creek has informed this court that Monument's cessation of business was "for reasons unrelated to the withdrawal order or the Mine Workers' claim." Brief of Respondent at 5. The record contains no further indication of Monument's reasons for ceasing business.

**4.** Monument initially brought an action before a FMSHRC Administrative Law Judge, contesting the August 1 withdrawal order on which the UMWA's section 111 claim was based. When Monument subsequently failed to respond to the ALJ's orders, when certified mail to it was returned unclaimed, and when its former counsel stated that he was no longer authorized to represent it, the contest proceeding was dismissed. *Monument Mining Corp. v. Secretary of Labor,* 7 F.M.S.H.R.C. 232 (1985).

**5.** The Commission's opinion is ambiguous as to how it is to be determined whether an operator is "responsible" for the underlying conditions.

One reading is simply that only that operator to whom the Secretary addressed the citation or withdrawal order is "responsible" for the conditions. Some of the language in the penultimate paragraph of the opinion could be read, however, to suggest a role for the Administrative Law Judge in the section 111 compensation proceeding in determining whether the cited operator was alone responsible for the underlying violation. Such an interpretation would be in tension with this court's holding (in a case under the Coal Act) that a compensation order could be based only on the withdrawal order "as issued," and not on the underlying facts which might have justified a broader order. *District 6, UMWA v. Department of the Interior Bd. of Mine Operations Appeals,* 562 F.2d 1260, 1263 (D.C. Cir.1977). *See* note 14 *infra.*

## II. ANALYSIS

### A. *Standard of Review*

This case was decided below on stipulated facts. There is, accordingly, no issue of fact relevant to the outcome. Rather, this case presents "a pure question of statutory construction, [on which] our first job is to try to determine congressional intent, using 'traditional tools of statutory construction.' If we can do so, then that interpretation must be given effect...." *NLRB v. United Food & Commercial Workers Union, Local 23,* — U.S. —, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987) (quoting *INS v. Cardoza–Fonseca,* — U.S. —, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)). If, on the other hand, "the statute is silent or ambiguous with respect to the specific issue," *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), then the question for us becomes whether the FMSHRC's construction of the statute is "permissible," *id.,* that is, one that is "rational and consistent with the statute." *United Food & Commercial Workers,* 108 S.Ct. at 421.

### B. *The Conditions for Liability Under Section 111*

This court has previously had occasion to observe, in interpreting the predecessor to the statute at issue here, that "[i]t is a fundamental rule, too often neglected, that in statutory construction the primary dispositive source of information is the wording of the statute itself." *Association of Bituminous Contractors v. Andrus,* 581 F.2d 853, 861 (D.C.Cir.1978). We therefore begin our analysis by recalling the language of the statutory provision in question: "If a coal or other mine ... is closed by an order issued under section 814 of this title [section 104] or section 817 of this title [section 107] for a failure of the operator to comply with any mandatory health or safety standards, all miners who are idled due to such order shall be fully compensated ... by the operator...."

Examination of this passage discloses three conditions which must be met in order for Island Creek to be liable for payment of the lost wages. First, there must have been a withdrawal order under section 104 or 107 based on a violation of a mandatory health or safety standard. There is no dispute in this case that a withdrawal order was issued under section 104(d)(2) based on a violation of the mandatory safety standard contained in 30 C.F.R. § 77.1303(j). *See* Stipulation of Facts ¶ 7, J.A. 20; Mine Citation/Order, J.A. 40; *Monument Mining Corp.,* 9 F.M.S.H.R.C. at 210.

Second, the withdrawal order must have been the cause of the miners' loss of work. Here, the parties have stipulated that the miners were idled "[a]s a direct result" of the withdrawal order. Stipulation of Facts ¶ 10, J.A. 20.

Finally, Island Creek must have been the "operator" of the mine, as that term is defined in section 3(d) of the Mine Act. This element too is conceded. The parties have stipulated that "Island Creek Coal Company ... is an operator within the meaning of section 3(d) of the Act." Stipulation of Facts ¶ 3, J.A. 19. Nor was this stipulation in any way ill-considered, for section 3(d) expressly places "any owner" on the list of "operators." No party has suggested to us any reason why the definition of "operator" in section 3(d) would not apply when that term is used in section 111.

It is also worth noting what is *not* contained in the language of section 111. Nowhere is there any statement that the Secretary must issue a citation to a specific operator in order for that operator to be liable for lost wages under section 111. In fact, nowhere in section 111 is there any mention at all of the Secretary of Labor. The section provides quite simply that when certain conditions precedent are met, liability for lost wages attaches to the "operator" of the mine. As it is undisputed that these conditions were met, and that Island Creek is an "operator," the statutory conditions for Island Creek's liability to the miners are present.

Island Creek's argument that it cannot be liable under section 111 unless the Sec-

retary has issued a citation or withdrawal order against it is thus flatly inconsistent with the statute. In contrast to the enforcement provisions of sections 103, 104, 107 and 110, under which the Secretary has some discretion in choosing the "operator" against which to order withdrawals, issue citations, and propose civil penalties, *see* S.REP. No. 181, 95th Cong., 1st Sess. 14, *reprinted in* 1977 U.S.CODE CONG. & ADMIN. NEWS 3401, 3414; *cf. Republic Steel Corp. v. Interior Bd. of Mine Operations Appeals*, 581 F.2d 868, 870 (D.C.Cir.1978), section 111 is self-executing. Once the conditions precedent are fulfilled, the miners have a right to compensation—a right which they can vindicate through recourse to the FMSHRC. The Secretary of Labor has no discretion to override these statutory provisions, nor has she ever purported to exercise such discretion.[6] The proposition advanced by Island Creek and accepted by the Commission, that an "operator" is liable for section 111 compensation only if

the Secretary has chosen to cite it for the underlying violation, has no support whatever in the statutory language.[7]

The legislative history of the Mine Act provides additional support for this conclusion. In early 1977 the Fourth Circuit had made clear that under the Coal Act there could be multiple "operators" of a mine. *Bituminous Coal Operators' Ass'n v. Secretary of Interior ("BCOA")*, 547 F.2d 240, 245–47 (4th Cir.1977).[8] The Senate committee report on the bill that later that year became the Mine Act expressly took note of and approved the *BCOA* decision. S.REP. No. 181, 95th Cong., 1st Sess. 14, *reprinted in* 1977 U.S.CODE CONG. & ADMIN. NEWS 3401, 3414. Thus, it is absolutely clear that Congress was aware that there could be more than one "operator" of a single mine. Its use in section 111 of the term "the operator" can therefore only be taken as a reference to all of the operators jointly.[9]

6. The absence of any role for the Secretary in determining liability for compensation under section 111 should dispose of the argument advanced by Island Creek, Brief of Respondent at 26–31, that permitting miners to recover their lost wages from an operator not cited by the Secretary would be to "second-guess" her decisions, undermine her "prosecutorial discretion," and interfere with her policy of direct enforcement against independent contractors. Nothing in our decision prevents the Secretary from continuing to choose the operator(s) against whom she will issue citations or withdrawal orders. Section 111 was, however, not intended to be a part of the Act's *punitive* scheme. Rather, its purpose, as the legislative history makes clear, was to make the miners whole for wages lost due to a closure order. (It was also seen as providing additional incentive for compliance with the law and as removing a possible source of inspector reluctance to issue withdrawal orders.) *See* S.REP. No. 181, 95th Cong., 1st Sess. 46–47, *reprinted in* 1977 U.S.CODE CONG. & ADMIN. NEWS 3401, 3446. Permitting the miners to recover their lost wages from any of several available operators is not only consistent with the statutory language which accords the Secretary no role in determining section 111 liability, but also best serves the statutory purpose of making the miners whole for wages lost through no fault of their own.

7. That Island Creek's argument is untenable can also be seen by placing the statutory language at issue here—the third sentence of section 111—in the context of the two sentences that precede it. Island Creek's argument is based on the dual

use of the term "operator" in the third sentence: the statute first makes "failure of the operator to comply" with a safety standard part of the condition under which liability attaches, and, Island Creek argues, this antecedent use of the term "operator" serves to limit the scope of that term when it is "later used to identify the persons liable for payment of compensation to the idled miners." Brief of Respondent at 12–13. The first two sentences of section 111, *see* note 1 *supra*, which provide for more limited compensation in a broader range of cases, contain, however, no such antecedent use of the term "operator." Thus, it is difficult to argue that the phrase "compensation by the operator," when used there, is limited to some particular operator. And it is hard to imagine that Congress intended "by the operator" to mean anything different in the third sentence than it does in the first two. Had any such difference been intended, it would certainly have been stated explicitly.

8. This court agreed shortly thereafter, in *Association of Bituminous Contractors*, 581 F.2d at 862 (emphasis in original), that in certain cases "the definition of operator must encompass the owner *and* such other person" who "operates, controls, or supervises" the mine.

9. Had Congress intended the result the Commission and Island Creek advocate, it could easily have provided for it, by specifying, for example, that in case of a mine closure for failure of "an" operator to comply with a safety standard, the miners would be compensated by "such" opera-

Indeed, all of the courts that have had occasion to address the question have held that multiple operators are jointly liable under the Act. Or, put differently, the owner of a mine is liable without regard to its own fault for violations committed or dangers created by its independent contractor. The seminal case is the Fourth Circuit's decision in *BCOA*. That case, decided under the Coal Act,[10] dealt with whether a coal mine owner was liable for violations of safety standards by an independent contractor employed to do construction work in the mine. The court first held that both the owner and the construction company were "operators." It then turned to the question whether one operator was liable for the acts of the other. It is significant that, in answering this question, the court analyzed both the Coal Act's provision for civil penalties (then 30 U.S.C. § 819, now section 110 of the Mine Act, 30 U.S.C. § 820) *and* the provision for miner compensation for lost wages (then 30 U.S.C. § 820, now section 111, 30 U.S.C. § 821). It held that the statute made the owner liable for the independent contractor's violations, without regard to the owner's fault:

> Without exemption or exclusion, § 819 makes the operator of a coal mine in which a violation occurs subject to a civil penalty. Similarly, § 820 makes the operator of a coal mine liable to compensate coal miners who are idled by a with-

drawal order. These sections, when read with the definition of operator, impose liability on the owner or lessee of a mine regardless of who violated the Act or created the danger requiring withdrawal.... [A]ny violations of the Act committed by [the construction company] ... make[ ] the owner or lessee of that coal mine liable for a monetary sanction under §§ 819 and 820.

547 F.2d at 246–47.

The Ninth Circuit, in a case arising under the Mine Act, has agreed that "mine owners are strictly liable for the actions of independent contractor violations [sic] under the Coal Act and the present Act." *Cyprus Indus. Minerals Co. v. FMSHRC,* 664 F.2d 1116, 1119 (9th Cir.1981).[11] In addition, the Commission itself has expressly adopted the *BCOA* standard. In *Secretary of Labor v. Republic Steel Corp.,* 1 F.M.S.H.R.C. 5, 9 (1979), it agreed that under the Coal Act "an owner of a coal mine can be held responsible for any violations of the Act committed by its contractors." In *Secretary of Labor v. Old Ben Coal Co.,* 1 F.M.S.H.R.C. 1480, 1481–83 (1979), it held that the same was true under the Mine Act.[12]

We agree with the Fourth and Ninth Circuits and the Commission that the Mine Act, like the Coal Act, assesses liability without regard to the individual operator's

tor. Or it might have stated even more explicitly that the miners would be compensated by "the operator(s) cited by the Secretary" for the safety violation.

**10.** "Cases construing whom the Secretary of the Interior may cite under the Coal Act for independent contractors' violations have continuing validity under the Mine Act." *Harman Mining Corp. v. FMSHRC,* 671 F.2d 794, 797 n. 2 (4th Cir.1981). Congress' only substantive change relevant in this context was its explicit ratification of the courts' interpretation that an independent contractor could be an "operator."

**11.** In this circuit, the court in *Republic Steel Corp.* found it unnecessary to resolve the question, but stated that "we do not disagree with the Fourth Circuit's logic in [*BCOA* ] that the [Coal] Act leaves the agency free to assess either

coal mine owners or contractors." 581 F.2d at 870 n. 5.

**12.** Somewhat surprisingly, the majority opinion below made no reference at all to any of these cases or to the issues they raise.

*Old Ben* did leave open the possibility of Commission review of the Secretary's decision of which operator to cite. It established as the "appropriate inquiry" for such review, "whether the Secretary's decision to proceed against an owner for a contractor's violation was made for reasons consistent with the purpose and policies of the 1977 Act." 1 F.M.S.H.R.C. at 1485; *see also Secretary of Labor v. Phillips Uranium Corp.,* 4 F.M.S.H.R.C. 549 (1982). Without expressing an opinion on the validity of this holding, we observe that most of the concerns that moved the Commission on that issue, *see Phillips Uranium,* 4 F.M.S.H.R.C. at 553, are not applicable in the context of section 111.

fault.[13] Not only is this clear from the statutory language, but it is also a statutory interpretation that makes good sense. In view of the apparent ease with which owners can obtain indemnity provisions from their independent contractors for any liability imposed under the Act for health and safety violations by the independent contractor—demonstrated by the contract between Island Creek and Mounment, *see* J.A. 30—the owner will in most cases be able to secure reimbursement of civil penalties or compensation payments which result from violations attributable to the independent contractor. The "no-fault" standard is thus significant only in the exceptional case—such as this one—where the independent contractor defaults. It is hardly surprising that Congress chose to assign the risk of such default to the mine owner (who selected the independent contractor) rather than—in the case of section 111 compensation—to the mine workers.

Since liability under the Mine Act is without regard to fault, the argument that only an operator directly responsible for the violation that gave rise to the withdrawal order can be liable for compensation under section 111 must be rejected.[14]

CONCLUSION

We hold that miners eligible for compensation under section 111 of the Mine Act may collect that compensation from any "operator" of their mine, regardless of which operator was the addressee of the Secretary's citation or withdrawal order. The FMSHRC's decision to the contrary is not "rational and consistent with the statute." *United Food & Commercial Workers,* 108 S.Ct. at 421.

Because the Commission's decision to dismiss the miners' section 111 claim against Island Creek was based on an erroneous interpretation of the statute, we reverse that decision and remand the case to the

13. The Act does permit consideration of fault in one context: section 110(i), 30 U.S.C. § 820(i), directs the Commission (and implicitly the Secretary), in setting the level of civil penalties for violations of the Act, to consider, *inter alia,* "whether the operator was negligent." The presence of this consideration here only serves to underscore its absence in the other provisions of the Act.

14. The several cases cited by Island Creek, Brief of Respondent at 14–20, and the Commission, 9 F.M.S.H.R.C. at 212, to show that the Commission's decision is in accord with precedent, are not relevant to the question before us. In *Local Union No. 781, Dist. 17, UMWA v. Eastern Associated Coal Corp.,* 3 F.M.S.H.R.C. 1175 (1981), the Commission held that miners who had voluntarily withdrawn from their mine for a memorial period following a fatal accident were not entitled to compensation, because there was no "nexus" between their loss of work and the mine inspector's subsequent issuance of a withdrawal order. The case thus deals with a different question—not *who* should compensate the miners, but *whether* they should be compensated at all. There is no dispute over that issue in the present case.

Similarly, *Local Union 1889, Dist. 17, UMWA v. Westmoreland Coal Co.,* 8 F.M.S.H.R.C. 1317, 1324 (1986), contains no issue of whether a particular operator should be liable. There the Commission rejected the argument that com-

pensation under the third sentence of section 111 was unavailable merely because the mine inspector had issued a withdrawal order under section 103(j) half an hour prior to a withdrawal order under section 107(a). The Commission's point was simply that liability should turn on the conditions found by the inspector to have existed in the mine, rather than on the particular sequence in which the inspector issued the two orders.

Finally, Island Creek cites this court's decision in *District 6, UMWA v. Department of the Interior Board of Mine Operations Appeals,* 562 F.2d 1260, 1263 (D.C.Cir.1977), along with several Commission decisions, for the principle that a compensation proceeding cannot be used to review the basis for a withdrawal order; rather, liability under section 111 must be based on the order "as issued." This holding is unexceptionable and also irrelevant. *District 6* dealt with a provision of the Coal Act, deleted from the Mine Act, which provided for compensation only in the case of an "unwarrantable" failure of the operator to comply with a safety standard. We rejected the UMWA's offer to prove that the operator's failure had in fact been "unwarrantable," even though the withdrawal order had not alleged this. Again, the question raised in that case is not the one presented here. In this case it is uncontested that the miners are due compensation from someone under the withdrawal order "as issued;" the only question is from *whom* compensation is due, and *District 6* does not purport to answer that question.

Commission for further proceedings consistent with this opinion.

*So ordered.*