PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SPEED MINING, INCORPORATED,
                                    *Petitioner,*

v.

FEDERAL MINE SAFETY AND HEALTH
REVIEW COMMISSION; SECRETARY OF
LABOR; MINE SAFETY AND HEALTH
ADMINISTRATION,
                                    *Respondents.*

No. 07-2090

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission.
(WEVA 2005-20-R; WEVA 2005-21-R; WEVA 2005-22-R;
WEVA 2005-23-R; WEVA 2005-24-R; WEVA 2005-25-R;
WEVA 2005-97)

Argued: May 14, 2008

Decided: June 11, 2008

Before WILKINSON and KING, Circuit Judges,
and Jackson L. KISER, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge King and Senior Judge Kiser joined.

## COUNSEL

**ARGUED:** Daniel William Wolff, CROWELL & MORING, LLP,
Washington, D.C., for Petitioner. Robin Ann Rosenbluth, UNITED

STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Timothy M. Biddle, Natalia R. Medley, CROWELL & MORING, LLP, Washington, D.C., for Petitioner. Gregory F. Jacob, Solicitor of Labor, Edward P. Clair, Associate Solicitor, W. Christian Schumann, Counsel, Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Respondents.

---

**OPINION**

WILKINSON, Circuit Judge:

Speed Mining, Inc. ("SMI"), an owner-operator of a coal mine in West Virginia, petitions for review of a final decision of the Federal Mine Safety and Health Review Commission. SMI argues that it was wrongly cited for violations committed by an independent contractor it had engaged, because the Secretary of Labor lacks the authority to cite an owner-operator for an independent contractor's violations. In the alternative, SMI contends that the Secretary abused her discretion in issuing the citations.

We reject both of SMI's arguments. It is settled law in this and other circuits that the Secretary possesses the discretionary authority to cite owner-operators, independent contractors, or both for safety violations committed by independent contractors. Moreover, there are no manageable standards in the Mine Act that enable us to review the Secretary's discretionary exercise of her enforcement authority.

I.

A.

Congress enacted the Federal Mine Safety and Health Act, 30 U.S.C. §§ 801-964 (the "Mine Act"), in order to protect the mining industry's "most precious resource — the miner." 30 U.S.C. § 801(a) (2000). To that end, the Mine Act directs the Secretary of Labor, acting through the Mine Safety and Health Administration ("MSHA"),

to develop and promulgate "mandatory health and safety standards" for the mining industry. *See id.* § 811.

In order to ensure compliance with these safety standards, the Act further directs the Secretary to inspect mines, *see id.* § 813(a), and issue citations to any mine "operators" the Secretary believes have "violated [the Mine Act], or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to [the Mine Act]," *id.* § 814(a). The Secretary is also required to propose and assess civil penalties against any operators who violate the Act or MSHA standards. *See id.* §§ 815, 820(a).

An operator may contest a citation or civil penalty before the Federal Mine Safety and Health Review Commission (the "Commission"). *See id.* §§ 815(d), 823. The Commission is an independent agency responsible for adjudicating disputes arising under the Mine Act. *See id.* § 823. The Commission appoints administrative law judges ("ALJs") to review claims in the first instance in trial-like administrative hearings, *see id.* § 823(d)(1), and the Commission exercises discretionary appellate review over ALJ decisions, *see id.* § 823(d)(2)(A)(i). Any person "adversely affected or aggrieved" by the Commission's decision may then seek judicial review in the Court of Appeals of either the D.C. Circuit or the circuit where the violation is alleged to have occurred. *Id.* § 816(a)(1).

## B.

Speed Mining, Inc., owns and operates American Eagle Mine ("the Mine"), an underground coal mine in Dry Branch, West Virginia. In 2004, SMI engaged Cowin and Company, Inc. ("Cowin"), to sink an elevator shaft at the Mine. SMI did not check Cowin's history with regard to employee injuries or mine safety violations, even though such data was readily available on MSHA's website. In fact, Cowin's injury rate was substantially above — four to ten times higher than — the national average for the eight preceding years.

SMI's contract with Cowin gave the latter almost complete discretion to sink the shaft as it saw fit. To this end, the contract stated that Cowin was an "independent contractor" and not an "agent" of SMI, and that Cowin "maintain[ed] complete control at all times over its

employees and any Subcontractors, Vendors, or others working
under" Cowin's supervision. Moreover, the contract granted Cowin
"full power and authority to select the means, manner, and method of
[its performance] without control or direction by" SMI. Cowin was
also responsible for complying with "all laws, rules, orders, and regu-
lations, federal, state, and local," applicable to the sinking of the mine
shaft.

In August 2004, Cowin began constructing the elevator shaft. On
August 31, September 2, and September 13, a MSHA official
inspected Cowin's shaft-sinking site. Each time, the inspector found
violations of MSHA safety standards. Over this two week period, the
inspector issued four citations to Cowin.

On the same dates, the MSHA inspector also visited an electrical
substation at the Mine. SMI had retained American Electrical, Inc.
("AEI"), another independent contractor, to install equipment at the
substation. On August 31, the inspector discovered that AEI had vio-
lated a MSHA regulation, and he thus issued AEI a citation. The
inspector also twice determined that SMI had failed to provide hazard
training for AEI employees, despite being compelled to do so under
MSHA regulations. *See* 30 C.F.R. § 46.12 (2007). The inspector cited
SMI for these violations.

On September 29, 2004, an accident occurred at Cowin's shaft-
sinking site: a crane hoist failed and, as a result, a six-ton bucket fell
and landed next to the mine shaft opening. Although no one was seri-
ously injured during the accident, the free-falling bucket presented a
severe safety risk. If the bucket had fallen a few feet to the side (over
the mine shaft), it would have seriously injured, and possibly killed,
the five Cowin employees working in the shaft at the time of the acci-
dent.

After investigating the accident, MSHA determined that six viola-
tions of MSHA safety standards had occurred: failure to correct
defects in the crane; failure to adequately train the crane operator;
failure to comply with the MSHA-approved shaft sinking plan (two
separate violations); failure to remove the crane from service, despite
the fact that two safety switches were not functional; and failure to
perform an adequate pre-operational check on the crane. The Secre-

tary thus issued both Cowin and SMI citations for each of these six violations. The citations received by Cowin and SMI were nearly identical in every respect, except for the fact that SMI was charged with a lower degree of negligence.

SMI subsequently contested the citations arising from the crane hoist accident. Before an ALJ, SMI claimed that the Secretary abused her discretion in citing SMI "for violations for which an independent contractor alone was responsible." SMI's arguments were largely based on the Commission's decision in *Twentymile Coal Co.*, 27 FMSHRC 260 (2005). In *Twentymile*, the Commission held that the Secretary abused her discretion in citing an owner-operator for violations committed by an independent contractor.

Relying on this decision, the ALJ agreed with SMI and held that the Secretary had abused her discretion in citing SMI in connection with the September 29, 2004 accident. The Secretary subsequently appealed the ALJ's decision. The Commission granted the Secretary's appeal, and then stayed the case pending the D.C. Circuit's review of *Twentymile*.

In July 2006, the D.C. Circuit reversed the Commission's *Twentymile* decision. *See Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151 (D.C. Cir. 2006). The D.C. Circuit held that the Secretary possessed discretionary authority to "cite owner-operators, their independent contractors, or both for safety violations committed by the independent contractors," and that the Commission lacked the authority to review these discretionary decisions made by the Secretary. *Id.* at 161.

In light of the D.C. Circuit's *Twentymile* decision, the Commission remanded SMI's case to the ALJ for reconsideration. Upon remand, the ALJ affirmed all of the Secretary's citations and assessed penalties for SMI's violations. The Commission declined review, and the ALJ's decision thus became a final order of the Commission and subject to judicial review. 30 U.S.C. § 823(d)(1) (2000).

On October 30, 2007, SMI filed a timely appeal to this court. In its appeal, SMI argues that the Mine Act bars the Secretary from citing an owner-operator for violations committed by an independent

contractor. In the alternative, SMI contends that, even if the Secretary does have such discretionary authority, she abused her discretion in this case. We review each claim in turn.

## II.

We first consider SMI's argument that the Mine Act bars the Secretary from citing an owner-operator for violations committed by an independent contractor.

The Mine Act places the "primary responsibility" for preventing unsafe mining conditions on mine "operators." 30 U.S.C. § 801(e) (2000). The Act defines an "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or any independent contractor performing services or construction at such mine." *Id.* § 802(d).

In order to encourage operator compliance, the Act provides the Secretary with numerous regulatory tools. For example, the Mine Act grants the Secretary the following power to cite mine operators:

> If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator . . . has violated [the Act], or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to [the Act], he shall, with reasonable promptness, issue a citation to the operator.

*Id.* § 814(a) (the "citation provision"). The Mine Act also gives the Secretary the power to assess civil penalties against the "operator of a coal or other mine in which a violation . . . of a mandatory health or safety standard" occurs. *Id.* § 820(a) (the "civil penalty provision").

SMI centers its claim on the text of the Mine Act's citation provision. SMI contends that the Mine Act's use of the definite article "the" before the provision's second use of the word "operator" indicates that the Secretary only has the statutory authority to cite "the operator that 'has violated [the Mine] Act' or any safety standard promulgated under the Mine Act." *Brief of Appellant* at 17 (quoting 30

U.S.C. § 814(a) (2000)). Given this, SMI argues that the Secretary lacks the statutory authority to cite mine owners, such as SMI, when their independent contractors, such as Cowin, are the ones who violate the Mine Act.

In response, the Secretary argues that SMI's "exclusive reliance" on the Mine Act's citation provision leads to a "fundamentally flawed" interpretation of the statute. *Brief of Appellee* at 25. According to the Secretary, reading § 814(a) in the context of the Mine Act as a whole clearly establishes that the Secretary possesses the discretionary authority to "cite *both* the owner-operator . . . *and* the independent contractor for violations committed by the independent contractor." *Id.* at 27-28 (emphasis in original).

We find that the Secretary's reading of the statute is not only reasonable under *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984), but also correct. Based on the text and purposes of the Mine Act, as well as uncontradicted precedent, we conclude that 30 U.S.C. § 814(a) grants the Secretary the discretionary authority to "cite the independent contractor, the owner, or both" for any violations of the Mine Act committed by an independent contractor. *Cyprus Indus. Minerals Co. v. Fed. Mine Safety and Health Review Comm'n*, 664 F.2d 1116, 1119 (9th Cir. 1981).

The textual analysis conducted by this court in *Bituminous Coal Operators' Association v. Secretary of Interior*, 547 F.2d 240 (4th Cir. 1977) ("*BCOA*"), remains sound. In *BCOA*, this court held that, under the statutory precursor to the Mine Act, the Federal Coal Mine Health and Safety Act of 1969, Pub. L. No. 91-173, 83 Stat. 742 (the "Coal Act"), mine owner-operators could be held liable for health and safety violations committed by independent contractors. *See BCOA*, 547 F.2d at 245-47.

The court in *BCOA* based its holding on two separate determinations, both grounded in the text of the Coal Act. First, the court considered the Coal Act's definition of operator: "'any owner, lessee, or other person who operates, controls, or supervises a coal mine.'" *See id.* at 246 (citing 30 U.S.C. § 802(d) (1976)). Because the entities listed in this definition were not mutually exclusive — for instance,

an independent contractor may "control" or "supervise" all or part of a mine that has a completely separate "owner" — the court reasoned that multiple "operators" could be present at a single coal mine simultaneously. *See BCOA*, 547 F.2d at 246-47.

Second, the court found that the Coal Act's civil penalty and compensation provisions — identical in all relevant part to the same provisions found later in the Mine Act — operated without regard to fault. *Id.* In particular, the court noted that an operator could face civil penalties if a violation merely occurred at its mine, and that an operator is liable to compensate idled coal miners regardless of whether it caused the safety conditions that prompted the Secretary to mandate a work stoppage. *Id.* (discussing the Coal Act's civil penalty, 30 U.S.C. § 819 (1976), and compensation, *id.* § 820, provisions).

Taken together, these two determinations — that multiple operators may be present at a single mine simultaneously, and that those operators can be held liable without regard to fault — led the court in *BCOA* to the conclusion that the owner of a mine may be held "jointly and severally liable for violations committed by" its independent contractor. *BCOA*, 547 F.2d at 247.

The continuing relevance of *BCOA* is unsurprising, as the Coal Act provisions relied on by the court in *BCOA* are largely unchanged in the Mine Act. Indeed, the Mine Act's only material change to the provisions relied on in *BCOA* is the specific inclusion of "independent contractors" in the definition of "operator." *See* 30 U.S.C. § 802(d) (2000). Furthermore, the "Senate Report accompanying the bill that became the Mine Act stated that the purpose of this amendment was to give statutory expression to the doctrine of *BCOA*." *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 535 (D.C. Cir. 1986); *see also Int'l Union, United Mine Workers of America v. Fed. Mine Safety and Health Review Comm'n*, 840 F.2d 77, 82 (D.C. Cir. 1988) ("*UMWA*").

Our holding is likewise consistent with the purposes of the Mine Act, as evidenced by its text — ensuring the health and safety of miners. *See, e.g.*, 30 U.S.C. § 801(a) (2000). Precluding owner-operator liability for independent contractor violations would encourage owners to use contractors as a means of insulating themselves from safety

regulations. Owner-operators are "generally in continuous control of [mine] conditions" and thus "more likely to know the federal safety and health requirements." *Cyprus Indus.*, 664 F.2d at 1119 (emphasis omitted). It is difficult to see how miner safety is encouraged by allowing a mine owner to "'exonerate itself from its statutory responsibility for the safety and health of miners merely by establishing a private contractual relationship.'" *Id.* at 1120 (quoting *Republic Steel Corp.*, 1 FMSHRC 5, 11 (1979)).

Moreover, owner-operators possess ultimate authority over independent contractors — retaining, supervising, and even dismissing them, if necessary. Adopting SMI's interpretation of the Mine Act would encourage owner-operators to remain willfully blind to the safety histories of their independent contractors. Conversely, holding owner-operators liable for independent contractor violations encourages owners to consider the safety records of companies before contracting, something SMI neglected to do in this case. With the Mine Act, Congress recognized that safety sometimes requires additional expense, and that the temptation to cut costs is often great. But the Act does not leave mine owners free to sacrifice miner safety in the name of project cost. Doing so would only jeopardize the health and safety of the mining industry's "most precious resource — the miner." 30 U.S.C. § 801(a) (2000).

Our decision should hardly be surprising. Indeed, it is consistent with the rulings of every court that has considered the precise question before us concerning the Secretary's citation authority. *See Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 161 (D.C. Cir. 2006) (holding that the Secretary has the authority "to cite owner-operators, their independent contractors, or both for safety violations committed by the independent contractors"); *Harman Mining Corp. v. Fed. Mine Safety and Health Review Comm'n*, 671 F.2d 794, 797 (4th Cir. 1981); *Cyprus Indus.*, 664 F.2d at 1119. In fact, an unbroken string of courts has found that an owner-operator and an independent contractor are "jointly liable" for any Mine Act violations. *UMWA*, 840 F.2d at 83; *see also Twentymile*, 456 F.3d at 154-55; *Harman Mining*, 671 F.2d at 797; *Cyprus Indus.*, 664 F.2d at 1119. Congress recognized the dangers inherent in coal mining, the potential both above and below ground for mishaps to occur, and the tragic consequences to miners and their families resulting from the loss of limb or life.

*See, e.g.*, 30 U.S.C. § 801(b) (2000). We do no more than respect that legislative judgment here.

### III.

SMI next argues that the Secretary abused her discretion in citing SMI for the violations arising from the crane hoist accident. In response, the Secretary contends that her decision to cite SMI is unreviewable as a matter of law. Since we would lack the authority to consider SMI's abuse of discretion claim if the Secretary's decision is unreviewable, we first consider the Secretary's argument.

### A.

Although there is a "strong presumption" in favor of judicial review of agency action, *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); *Twentymile*, 456 F.3d at 156; *ElectriCities of N.C., Inc. v. S.E. Power Admin.*, 774 F.2d 1262, 1266 (4th Cir. 1985), such action has traditionally been considered unreviewable if it is "committed to agency discretion by law,"* *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (internal quotations omitted); *see also Heckler v. Chaney*, 470 U.S. 821, 832 (1985). In *Overton Park*, the Supreme Court held that agency action is "committed to agency discretion . . . in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Overton Park*, 401 U.S. at 410 (internal quotations omitted). In other words, judicial review is unavailable if

---

*The Supreme Court has noted that section 701(a)(2) of the Administrative Procedure Act ("APA") "codifies the nature and attributes of judicial review, including the traditional principle of its unavailability 'to the extent that . . . agency action is committed to agency direction by law.'" *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (quoting 5 U.S.C. § 701(a)(2)). This makes clear that the principles underlying APA § 701(a)(2) are applicable even if the APA itself is not. *See Twentymile*, 456 F.3d at 159. Thus, the fact that the Mine Act states that sections 701 to 706 of the APA "shall not apply" to any Mine Act review proceedings, 30 U.S.C. § 956 (2000), does not preclude the "committed to agency discretion" exception from applying in this case.

a statute provides "no judicially manageable standards . . . for judging how and when an agency should exercise its discretion." *Heckler*, 470 U.S. at 830.

In determining whether a "meaningful standard" for reviewing agency discretion exists, *id.*, courts consider the particular language and overall structure of the statute in question, *see Webster v. Doe*, 486 U.S. 592, 600-01 (1988), as well as "the nature of the administrative action at issue," *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002); *Twentymile*, 456 F.3d at 156. Though actions "committed to agency discretion by law" constitute a "very narrow exception" to the presumption favoring judicial review, *Overton Park*, 401 U.S. at 410, the Supreme Court and other courts have found numerous administrative decisions unreviewable under this standard, *see, e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 192-93 (1993) (decision to discontinue program funding); *Heckler*, 470 U.S. at 837-38 (decision not to institute enforcement proceedings); *Swift v. United States*, 318 F.3d 250, 252-53 (D.C. Cir. 2003) (decision to dismiss an action); *Baltimore Gas & Electric Co. v. FERC*, 252 F.3d 456, 461-62 (D.C. Cir. 2001) (decision to settle an action); *Sierra Club v. Larson*, 882 F.2d 128, 132 (4th Cir. 1989) (decision not to institute enforcement proceedings).

### B.

Applying these principles, we hold that the Secretary's discretionary decision to cite SMI for the crane hoist accident is "committed to agency discretion by law," and therefore unreviewable.

To begin, the relevant provisions of the Mine Act provide no meaningful standard for review. As discussed earlier, the Mine Act's citation provision states that if the Secretary "believes that an operator . . . has violated [the Mine Act]," the Secretary shall "issue a citation to the operator." 30 U.S.C. § 814(a) (2000). Likewise, the Mine Act defines "operator" to mean "any owner, lessee, or other person who operates, controls, or supervises a . . . mine or any independent contractor performing services . . . at such mine." *Id.* § 802(d).

Given that multiple jointly-liable operators may be working at any given mine, these provisions provide the Secretary with no direction as to which operator or operators to cite in a particular case. *See*

*Twentymile*, 456 F.3d at 157. Indeed, the Mine Act is entirely silent on this point. This lack of "guidelines against which to measure [the Secretary's] exercise of its enforcement discretion" leaves this court with no manageable standard to apply. *Baltimore Gas*, 252 F.3d at 460.

The potential standards proposed by SMI do nothing to change this assessment. Indeed, a quick review of some of SMI's proposals only confirms our determination that the Secretary's citation authority is generally unreviewable. For example, SMI argues that the Secretary's own Enforcement Guidelines "would provide an objective framework for reviewing the Secretary's actions." *Brief of Appellant* at 40. However, as SMI itself recognizes, these Guidelines are non-binding, and the Secretary is not required to observe them. *See Cathedral Bluffs*, 796 F.3d at 539. It is thus difficult to see how the Guidelines could form a workable standard for reviewing the Secretary's action.

SMI also proposes that we review the Secretary's enforcement decisions by looking at "more objective standards, such as whether there is a factual basis for holding [an owner-operator] vicariously liable under traditional tort principles, or whether the [owner-operator] . . . could be held liable under an employer/employee or principal/agent analysis." *Brief of Appellant* at 41. This standard is also unsuitable.  As stated earlier, owner-operators are jointly and severally liable for their independent contractor's violations under the Act. It would thus directly contradict the Mine Act's text to limit owner-operator liability based on the standards SMI suggests.

Finally, SMI asks us to consider whether the Secretary is enforcing the Mine Act in a manner "consistent with [its] purpose and policies." *Brief of Appellant* at 41 (internal quotations omitted). This is the precise standard the D.C. Circuit rejected in *Twentymile*, and we too find it wanting. Not only is the standard "nowhere to be found in the [Mine] Act itself," *Twentymile*, 456 F.3d at 158, but it also threatens to render the principles of nonreviewability discussed earlier null and void. Indeed, since all legislation has purposes and policies, adopting this standard would in essence "hold all agency decisions under all statutes reviewable." *Id.* Thus, this standard, like all of the standards SMI proposes, only confirms our conclusion that there is no manageable standard for us to apply in this case.

Moreover, the "nature of the administrative action at issue" further supports our conclusion that the Secretary's actions are unreviewable. *Drake*, 291 F.3d at 70. It is difficult to think of a category of administrative action less prone to review than the Secretary's exercise of her exclusive authority to enforce the Mine Act. *See Sec'y of Labor v. Mutual Mining, Inc.*, 80 F.3d 110, 113-14 (4th Cir. 1996). Indeed, an "agency's exercise of its enforcement discretion" is "an area in which the courts have traditionally been most reluctant to interfere." *Cathedral Bluffs*, 796 F.2d at 538.

The discretionary decision as to which operator to cite for a Mine Act violation rests on a "complicated balancing of a number of factors which are peculiarly within" the Secretary's expertise:

> whether a violation has occurred, . . . whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether [a] particular enforcement action . . . best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.

*Heckler*, 470 U.S. at 831. As the Supreme Court noted in *Heckler*, the Secretary is "far better equipped than the courts" to balance these factors and determine its enforcement priorities. *Id.* at 831-32. This is true for both presumptively unreviewable decisions not to enforce, such as in *Heckler*, and presumptively reviewable decisions to enforce, such as the Secretary's discretionary decision to cite SMI in this case.

Furthermore, the factors that guide the Secretary's citation decisions are not dissimilar from the considerations that guide a prosecutor's exercise of his discretion. *See Wayte v United States*, 470 U.S. 598, 607 (1985) (discussing the factors that influence a prosecutor's charging decision, including "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan"). Courts have long held that the government's exercise of prosecutorial discretion is "particularly ill-suited to judicial review," *id.*; *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), and

a number of courts have found that the "traditional nonreviewability of prosecutorial charging decisions" applies to certain discretionary administrative enforcement decisions. *Twentymile*, 456 F.3d at 157; *see also Drake*, 291 F.3d at 71; *Beverly Health & Rehab. Servs., Inc. v. Feinstein*, 103 F.3d 151, 153 (D.C. Cir. 1996).

Finally, the fact that the Mine Act explicitly grants aggrieved parties the right to seek the Commission's review if a "necessary legal conclusion is erroneous" or if a "substantial question of law, policy, or discretion is involved," *see* 30 U.S.C. § 823(d)(2)(A)(ii)(II), (IV) (2000), does not alter our analysis. While the Commission's authority is broad, it does not extend to reviewing the Secretary's policy-based enforcement decisions.

This court has previously considered the scope of the Commission's review authority under 30 U.S.C. § 823(d) in *Secretary of Labor v. Mutual Mining, Inc.*, 80 F.3d 110 (4th Cir. 1996). In that decision, we noted that the Commission's statutory role is to "operate[ ] as a 'neutral arbiter' that possesses 'nonpolicy-making adjudicatory powers.'" *Id.* at 114 (quoting *Martin v. OSHRC*, 499 U.S. 144, 154, 155 (1991)). In other words, while the Commission clearly has the authority to "review[ ] cases involving questions of policy," it is not "the final arbiter of such policies." *Mutual Mining*, 80 F.3d at 114 n.3. We think the principles established by *Mutual Mining* control in this case. Courts should not infer, absent clear evidence to the contrary, "that Congress expected the Commission to use its adjudicatory power to play a policymaking role." *See Martin*, 499 U.S. at 154 (emphasis omitted). As discussed earlier, the Secretary's discretionary exercise of her exclusive enforcement authority is a complicated, policy-based decision — precisely the sort of determination on which the Commission must defer to the Secretary's expertise. *Mutual Mining*, 80 F.3d at 114 (noting that the Secretary develops "policymaking expertise" in enforcing the Mine Act (internal quotations omitted)). Moreover, allowing the Commission to review the Secretary's enforcement choices would make every citation decision, however routine, the potential subject of a lengthy administrative and judicial appeal. There is no evidence in the Mine Act that Congress desired this outcome. In sum, while the Commission plays a vital role in ensuring that the Secretary's enforcement actions are supported by fact and consistent with the Mine Act's text, it does not have the

authority to second-guess the Secretary's policy-based choice of defendant.

## IV.

To summarize, we hold that the Secretary possesses the discretionary authority under the Mine Act to cite an owner-operator, an independent contractor, or both for independent contractor violations. We also hold that the Secretary's citation decisions are "committed to agency discretion by law" and, therefore, unreviewable. We reach this latter conclusion because no "meaningful standard" in the Mine Act exists for reviewing the Secretary's exercise of her discretionary enforcement authority.

The Commission's decision is therefore

*AFFIRMED*.