NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2214
_____

GABRIEL MALDONADO VASQUEZ,

Appellant

v.

OSCAR AVILES, Director of Corrections, Hudson County Correctional Center;
CHRISTOPHER SHANAHAN, Field Office Director, New York Office - ICE;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2-15-cv-02341)
District Judge: Honorable Claire C. Cecchi

_____

Submitted under Third Circuit LAR 34.1(a)
on November 12, 2015

Before: CHAGARES, RENDELL and BARRY, <u>Circuit Judges</u>.

(Filed: February 24, 2016)
_____

O P I N I O N[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, Circuit Judge:

Gabriel Maldonado Vasquez appeals the District Court's dismissal of his 28 U.S.C. § 2241 habeas corpus petition and its denial of his civil contempt motion. Because we discern no reversible errors in these rulings, we will affirm the District Court.

## I.    BACKGROUND

Vasquez was born in Guatemala and is a citizen of that country. In 1993, at the age of six, he immigrated to the United States. In 2005, he pled guilty to two misdemeanor offenses—reckless endangerment and theft—and the next year he pled guilty to resisting arrest. Then, in 2007, an immigration judge ordered him to be removed and deported to Guatemala. Soon thereafter, he pled guilty to possession of marijuana. Years later, in 2015, U.S. Immigration and Customs Enforcement ("ICE") agents arrested him and held him in custody pending his removal.

While detained by ICE, Vasquez claimed that he should not be removed because he was eligible for the Deferred Action for Childhood Arrivals ("DACA") program, which allows certain undocumented immigrants to temporarily stay in the country. These immigrants can be considered for the program even if they are "already in removal proceedings or subject to a final order of removal." (App. 118.) To be eligible for DACA, an individual must satisfy several requirements, one of which mandates that the individual cannot have "been convicted of . . . a significant misdemeanor offense [or] multiple misdemeanor offenses." (App. 117.) Significantly, the decision to grant relief under the program is an "exercise of prosecutorial discretion." (App. 118.)

2

To apply for DACA, an individual usually submits an application to U.S. Citizenship and Immigration Services. But that process is unavailable to individuals who are currently "in immigration detention." (App. 299.) Instead, they must contact their "deportation officer, the relevant 'Jail Liaison,' [or] the ICE Field Office Director." (*Id.*)

On April 2, 2015, Vasquez's counsel was informed by "Deportation Officer Carey" that Vasquez was "ineligible for DACA due to his misdemeanor convictions." (App. 14.) That same day, Vasquez filed a § 2241 habeas petition in the District of New Jersey. He claimed that his detention violated his due process rights because he was eligible for DACA relief, and because he was being detained contrary to certain federal regulations. He also claimed that his detention violated 8 U.S.C. § 1231, which limits how long one can be detained after a removal order is issued.

The next day, Christopher Shanahan, an ICE field office director, denied an I-246 application for stay of removal that Vasquez had filed soon after he was detained by ICE. In that application, Vasquez had asserted, among other things, that he deserved a stay of removal because he was eligible for DACA. Shanahan rejected the application, finding "no compelling reason to warrant a favorable exercise of [his] discretion." (App. 115.)

Several days later, on April 7, Vasquez filed an emergency motion to stay his removal. The next day, a judge granted the motion and ordered a temporary stay. But that order came too late: Vasquez had been deported to Guatemala three hours before it was issued. Vasquez subsequently filed a motion to hold the appellees in civil contempt, claiming they had purposefully violated the stay order by deporting him.

3

On April 24, 2015, the District Court concluded that it lacked subject matter jurisdiction over Vasquez's habeas petition because it was grounded in his 2007 removal order and therefore was not reviewable by a district court. It also held that, given Vasquez's removal from the United States, his petition was moot to the extent that it challenged the legality and length of his detention. Lastly, it denied his contempt motion, concluding that the appellees could not have violated the stay order because they had removed Vasquez three hours *before* the order was issued.

## II. DISCUSSION

### A. Lack of Subject Matter Jurisdiction[1]

Under the REAL ID Act, a district court lacks jurisdiction to consider a § 2241 habeas petition if that petition seeks "judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). A petitioner may request review of such an order only "with an appropriate court of appeals." *Id.* Relying on § 1252(a)(5), the District Court held that it lacked jurisdiction because Vasquez's petition was "grounded in" his January 2007 removal order. (App. 7.) We will affirm the District Court, albeit on a different ground.

Vasquez argues that the District Court erred because his § 2241 habeas petition pertained "to his relief from removal, not the removal order itself." (Vasquez's Br. 17.) In effect, he contends that he was challenging not his removal order but the government's subsequent failure to grant him discretionary relief under DACA. For support, he draws on *Nnadika v. Attorney General of United States*, 484 F.3d 626 (3d Cir. 2007), a case in

---

[1] We review a district court's dismissal for lack of subject matter jurisdiction *de novo*. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

4

which an individual subject to an order of removal filed a § 2241 petition challenging the denial of his application for asylum relief. We held that the district court had jurisdiction to consider his petition because the petition did not "directly implicate the order of removal," as it "point[ed] to no legal error in the final order of removal." *Id.* at 632–33.

But even if we credit Vasquez's argument, we must still conclude that the District Court lacked jurisdiction over his § 2241 petition insofar as it pertained to his claim that he was entitled to relief under DACA. Under 8 U.S.C. § 1252(g), titled "Exclusive jurisdiction," "notwithstanding . . . section 2241 of Title 28 . . . no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." This provision deprives all courts of jurisdiction to review a denial of DACA relief because that decision involves the exercise of prosecutorial discretion not to grant a deferred action. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 (1999) ("Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations . . . ."). The District Court therefore lacked jurisdiction to consider Vasquez's challenge to his denial of DACA relief.

B. **Mootness of Habeas Petition**[2]

The District Court also held that Vasquez's arguments in his § 2241 petition as to the legality and length of his detention itself became moot upon his removal. On appeal,

---

[2] We review a district court's dismissal for mootness *de novo*. *See Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 61 (3d Cir. 1991).

5

Vasquez argues that his petition did not become moot upon his removal because (1) he was in custody when he filed it; and (2) he has suffered a collateral consequence from his removal. Neither argument has merit.

Under § 2241(c), habeas corpus relief "shall not extend to a prisoner unless [h]e is in custody." However, "what matters for the 'in custody' requirement is whether the petitioner was in custody *at the time his habeas petition was filed*." *Kumarasamy v. Attorney Gen. of U.S.*, 453 F.3d 169, 173 n.7 (3d Cir. 2006). Accordingly, "[a]s long as the petitioner was in custody when he filed his petition, a subsequent release from custody (e.g. a subsequent removal) will not divest the court of jurisdiction." *Id.*

Vasquez thus contends that "the fact that [he] has been removed does not moot his petition, since he was in custody when it was filed." (Vasquez's Br. 20–21.) But the District Court never held that Vasquez's removal caused his petition to become moot because it no longer satisfied § 2241's "in custody" requirement. Rather, it correctly held that his petition was moot insofar as it challenged the legality and length of his detention, for upon his removal his petition no longer presented a justiciable case or controversy.

"Under Article III, § 2 of the United States Constitution, the exercise of judicial power depends upon the existence of a case or controversy." *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 383 (3d Cir. 2001). For a case or controversy to exist, a petitioner, throughout each stage of the litigation, "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *DeFoy v. McCullough*, 393 F.3d 439, 442 (3d Cir. 2005) (citation omitted). As a result, "a petition for habeas corpus relief generally becomes moot when a prisoner

6

is released from custody before the court has addressed the merits of the petition." *Id.*

Nevertheless, a habeas petitioner may obtain judicial review of the petition by showing that "secondary or 'collateral injuries' survive after resolution of the primary injury." *Chong*, 264 F.3d at 384. Vasquez thus argues that his petition is not moot because he has endured a collateral consequence from his removal. Under 8 U.S.C. § 1182(a)(9)(A)(ii), an alien "who has been ordered removed . . . and who seeks admission within 10 years of the date of such alien's departure or removal . . . is inadmissible." Given this ten-year bar to his reentry, Vasquez contends that his removal has caused him to suffer "a sufficient collateral consequence." (Vasquez's Br. 22.)

We disagree. The only argument that Vasquez makes in his § 2241 petition that could implicate his alleged collateral consequence is that he is entitled to relief under DACA. That is, if a court agreed with him that the failure to grant him DACA relief was error, he could remain in the United States and avoid § 1182's ten-year bar to reentry. Yet, as discussed above, no court has jurisdiction to review that decision. *See* 8 U.S.C. § 1252(g). Vasquez's alleged collateral consequence is therefore incapable of being redressed by any court and cannot save his petition from mootness. *See Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (3d Cir. 2007) ("For a habeas petition to continue to present a live controversy after the petitioner's release or deportation, . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition.").

C. **Civil Contempt**[3]

---

[3] We review a district court's denial of a contempt motion for abuse of discretion. *See Robin Woods Inc. v. Woods*, 23 F.3d 396, 399 (3d Cir. 1994).

Lastly, Vasquez argues that the District Court erred when it denied the civil contempt motion that he filed against the appellees. Specifically, he contends that they should have been held in contempt because they removed him despite the Court's order temporarily staying his removal. But, as the District Court explained, the temporary stay of removal was not issued until several hours *after* ICE had removed him. The District Court therefore did not abuse its discretion in denying his motion. *See Roe v. Operations Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) ("[T]o show civil contempt, a plaintiff must establish the following: '(1) that a valid court order existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.'").

## III. CONCLUSION

For the foregoing reasons, we will affirm the rulings of the District Court.